## STATE v. BERRY.

FORGERY.—There is evidence in this case to support the charge of forgery by issuing a check knowing the indorsement thereon to be forged, and the portions of the charge quoted in the exceptions when construed with their connections state the principle that one presenting a check for payment is guilty of forgery if he knew the indorsement on it was a forgery and represented it to the bank paying the check as genuine.

Before ALDRICH, J., Charleston, June, 1906. Affirmed.

Indictment against Wade Hampton Berry for forgery. Defendant appeals.

*Messrs. W. Turner Logan* and *John P. Grace,* for appellant.

*Solicitor W. St. Julien Jervey,* contra, cites: *If there be any testimony to support verdict, there is no appeal from order refusing new trial on that ground:* 2 Bail., 11; 1 S. C., 1; 23 S. C., 226, 392; 38 S. C., 258; 68 S. C., 53; 69 S. C., 101. *Intent to defraud refers to persons to whom paper is presented:* 1 Brev., 34; 56 S. C., 495. *Forgery defined:* Crim. Code, 373; 72 S. C., 508.

February 9, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. The indictment in this case contained three counts, the first charging that on July 18th, 1905, defendant, with intent to defraud the Enterprise Bank, forged a check dated Charleston, S. C., July 1, 1905, drawn against the Bank of Dillon, Dillon, S. C., for fifty dollars, payable on demand to the order of cash, and purporting to be signed by W. A. Berry and indorsed by D. M. McIver; the second count charged that having said check in his possession he forged the same by writing on the back thereof the name of D. M. McIver, with intent to defraud

the Enterprise Bank; and the third count charged the utter-
ing of said forged check, knowing the same to be forged,
with intent to defraud the Enterprise Bank. The jury
rendered a verdict of not guilty as to the first and second
counts, and guilty as to the third, whereupon the defendant
was sentenced to imprisonment for one year and a fine of
one dollar.

The appellant's first exception alleges error in the refusal
of his motion for a new trial. The case does not show
upon what grounds the motion for a new trial was made,
but assuming that it was made upon the ground stated alone
in the exception, viz: that there was absolutely no testimony
to support the verdict, the exception cannot be sustained.
The circumstances brought out in the testimony and relied
on by the State to sustain the conviction were that defendant
actually received the money on the check from the Enter-
prise Bank after representing that the signature of D. M.
McIver was genuine, when in fact the signature was forged;
that the defendant's real name was Wade Hampton Berry
or W. H. Berry, and not W. A. Berry; that on July 9th,
1905, Rev. D. M. McIver performed a marriage ceremony
between defendant and a woman named Carrie Norris, and
gave them a marriage certificate bearing his signature; that
a few days thereafter defendant applied to the People's
Bank, in Charleston, S. C., to cash a check for $150 drawn
by him on the Bank of Marion, and when asked to be iden-
tified he called upon Rev. D. M. McIver, who stated to the
bank the circumstances and extent of his acquaintance with
defendant, viz: that he had performed a marriage ceremony
for defendant on Monday night previous and had called at
his place of residence, Mrs. Murdock's, 310 Meeting street;
the People's Bank refused to cash the check on this state-
ment unless defendant would send a telegram to the Bank of
Marion, which the cashier then wrote; that Berry was much
crestfallen and applied to D. M. McIver for the loan of
$5.00 to pay his board bill, which Rev. McIver refused, but
did lend him seventy-five cents with which to send the tele-

gram to the Bank of Marion to get his money; that on the 17th day of July, defendant sent a note to Rev. D. M. McIver by the woman with whom he was living as wife asking for a loan of $10.00, which was refused, with a statement by Rev. McIver that he was then on his way to the train for his summer vacation; that defendant, therefore, had no reason to believe that Rev. D. M. McIver was in Charleston on the 18th day of July, or would, if there, indorse his check; that on the 18th of July, when defendant applied to the Enterprise Bank to cash the check, he was asked to be identified, and produced the wedding certificate with the name of Rev. D. M. McIver on it, and stated that Rev. McIver was a friend; that when told that identification by Rev. McIver would be satisfactory, he went out and came back and said that the Rev. McIver could not come right then, and he inquired of the teller if Mr. McIver's indorsement would not do, and was informed that it would be satisfactory; that defendant went out and came back and presented the check purporting to be indorsed by D. M. McIver, and when asked if that was D. M. McIver's signature, said yes, and received the money on the check, which, being sent forward in the regular channels, was later returned without payment, indorsed "no funds;" that defendant testified that he had sent the check for Rev. D. M. McIver's indorsement by the woman whom he had married, and that she had returned it to him with the statement that Rev. McIver had signed it and was glad to do so; that defendant knew that the woman Carrie Norris was a bad woman and that he had been forced to marry her.

In view of these circumstances, it could not be said that there was no evidence to support the verdict.

The second exception alleges error in the following charge: "So that if one with intent to defraud forges, falsely writes the name of the indorser upon a note or other paper proper to be indorsed, that individual by thus indorsing that name to utter it and pass it off, that would be a forgery, and if he did that, he would be making a false paper represent-

ing a paper to be which, if true, a good valid paper in law, but by reason of the falsity of the indorsement, that is, if it was forged, was a valueless paper, *because the man whose name it purported to be was not there, and, therefore, a worthless paper,* and according to the testimony you will pass upon that." The alleged error being in charging the jury that a paper was a forged paper, was worthless paper, *because the man whose name it purported to be was not there.*

This is treating the Judge's charge hypercritically. It is manifest from the context that the Court meant "because (signature or indorsement of the) man whose name it purported to be was not there, and, therefore, a worthless paper."

The third, fourth and fifth exceptions quote isolated sentences from the charge, and allege that they were erroneous, because they involved an instruction that if defendant negotiated a check containing a forged indorsement he would be guilty of forgery, whether or not he had knowledge that the indorsement was forged. The sixth exception imputes a similar error to the charge as a whole.

We do not think the extracts from the charge referred to in the exceptions at all warrant the construction placed upon them by appellant, and a reference to the charge as a whole shows very clearly the jury could not have received the impression that defendant might be found guilty of forgery on the third count in uttering a bill containing a false indorsement, unless he had knowledge of forgery. The original charge emphasized that a fraudulent intent was essential, and when the jury were called into Court before adjournment for the day, and asked if they desired any matter explained, this colloquy between the Court and the foreman of the jury was certainly sufficient to remove any doubt that might have existed on that point:

"Foreman: We would like to ask about the third count, the one presenting it for payment. Does that *constitute forgery?*

"The Court: *Oh, yes, sir; each one of these counts amount to forgery.*

"Foreman: But he has to have knowledge that it is a forgery?

"The Court: Yes, sir, that is very essential to it; that he did it with a fraudulent intent, to cheat the bank out of that money.

"Foreman: *And* that means *that although he did not know that Mr. McIver did not sign this paper or indorse it*.

"The Court: Yes, sir.

"Foreman: Or that he did not assist in having Mr. McIver sign the paper?

"The Court: I don't know that I understand you.

"Foreman: If he assisted in having Mr. McIver endorse the paper, is that forgery?

"The Court: If I understand your question—if he had signed Mr. McIver's name by himself, it is necessary for him to do that to constitute the offense?

"Foreman: Yes, sir.

"The Court: No, sir. He could commit a forgery by himself actually writing the name, or forging it, but he can also commit a forgery by procuring and getting some other person to sign that name; or he can stamp it, or use any means to write it there. And if he procured another to write it, and it was done at his procurement, he knew that it was not Mr. McIver's signature, but he carried it to the bank and represented it, for the purpose of defrauding the bank, then that would amount to forgery."

The exceptions are overruled and the judgment of the Circuit Court is affirmed.